ORIGINAL

FILED
U.S. DISTRICT COURT

IN THE UNITED STATES DISTRICT COURT

2009 SEP 28 PM 4: 05

FOR THE SOUTHERN DISTRICT OF GEORGIA

CLERK _L. Flanders_
SO. DIST. OF GA.

DUBLIN DIVISION

MARK HAND,                              )
                                        )
        Plaintiff,                      )
                                        )
    v.                                  )   CV 309-061
                                        )
STATE OF GEORGIA et al., through        )
Dep't of Corrections, and BRIAN OWENS,  )
Corrections Commissioner,               )
                                        )
        Defendants.                     )

## MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

Plaintiff, an inmate incarcerated at Dodge State Prison located in Chester, Georgia, filed the above-captioned complaint pursuant to 42 U.S.C. § 1983 in the Northern District of Georgia. On September 3, 2009, the Honorable Charles A. Moye, Jr., United States District Judge, rejected Plaintiff's claims regarding events that allegedly occurred in the Northern District and transferred Plaintiff's remaining claims regarding the events that allegedly occurred at Baldwin State Prison ("BSP"), Appling State Prison ("ASP"),[1] and Dodge State Prison ("DSP") to this Court. (See doc. no. 4).

### I. BACKGROUND

In Plaintiff's complaint, he alleges that he "entered state custody with documented chronic health problems" and "long established treatment" for such problems, including

---

[1] Judge Moye noted in his September 3rd Order that ASP is part of Ware State Prison, which is located in Waycross, Georgia. (See doc. no. 4, p. 1).

medication that he states he brought with him to prison. (Doc. no. 1, p. 10). In his first 23 months of imprisonment (apparently at BSP), Plaintiff allegedly suffered five separate medical crises, two of which required hospitalization and the other three involving "heart/chest pain incidents." (Id.). Plaintiff further alleges that he was later transferred to Clayton Transitional Center on a work-release program as part of his parole, but he was unable to participate in the program due to health reasons. (Id.). Plaintiff states that as a result, he was transferred back into state prison and assigned to "outside 'contract' work detail," where he was forced to walk 6 to 10 miles a day picking up trash. (Id.)

Three months after returning to BSP, Plaintiff was transferred to ASP where, as Plaintiff alleges, he was "forced to work outside . . . mowing grass." (Id.). After one month of doing such work, Plaintiff was allegedly "unable to use his back properly due to chronic back pain." (Id.). Plaintiff further states that he "ruptured" his stomach and suffered a hernia. (Id.). He goes on to allege that Dr. Santiago failed to treat both his chronic and new medical conditions. (Id. at 10-11, 16). Plaintiff also contends that Nurse Tootle, whom he describes as "the sole nurse" at ASP, has control over which inmates Dr. Santiago sees and that she would not allow Plaintiff to see Dr. Santiago for his "ruptured stomach," even though Plaintiff submitted written requests for medical attention "four weeks in a row." (Id. at 11). Plaintiff goes on to state that he was eventually seen by Dr. Santiago, who reduced Plaintiff's medications without his knowledge. (Id. at 16). According to Plaintiff, Dr. Santiago also denied two requests by Plaintiff to see a different doctor. (Id.). Plaintiff contends that he was eventually allowed to see "a visiting doctor," who allegedly acknowledged that Plaintiff was suffering from a hernia but prescribed no treatment. (Id.).

Despite suffering from back pain and a hernia, Plaintiff was allegedly still required to work. (Id. at 11).

Plaintiff goes on to state that he has since been transferred to DSP for medical reasons, where he has been placed on "outside work detail," though he has not yet been required to work. (Id.). According to Plaintiff, the doctors at DSP have yet to "re-start [his] established treatment for chronic problems." (Id.). Moreover, as of July 14, 2009, Plaintiff had allegedly not seen any doctors at DSP to address "the damage done" by Dr. Santiago and Nurse Tootle. (Id.). Plaintiff alleges that he "remains in constant pain." (Id.).

As to all his allegations that he was required to perform physically demanding work despite his health problems, Plaintiff blames "Georgia prison administrators," specifically each prison's "classification committee." (Id. at 13). Plaintiff states that each committee is usually comprised of the Deputy Warden of Care and Treatment, the chief counselor, a uniformed officer in charge of outside work detail, and a "computer person to record[] committee decisions." (Id. at 8). Plaintiff also blames "medical administrative personnel" at each prison for failing to advise the prison classification committees as to his "health and work requirement[s]." (Id. at 13).

## II. DISCUSSION

A.  **BSP and ASP Claims**

In the same complaint, Plaintiff has described events that allegedly occurred at BSP in Hardwick, Georgia (located in the Middle District of Georgia), events that allegedly occurred at ASP in Waycross, Georgia (located in the Waycross Division of this District), and events that allegedly occurred at DSP in Chester, Georgia (located in this District and

Division). However, Plaintiff may not join his BSP and ASP claims to his claims regarding the events that allegedly at DSP unless the claims arise "out of the same transaction, occurrence, or series of transactions or occurrences . . . and . . . any question of law or fact common to all defendants will arise in the action." Fed. R. Civ. P. 20(a)(2). "In determining what constitutes a transaction or occurrence for the purposes of Rule 20(a), courts have looked for meaning to Fed. R. Civ. P. 13(a) governing compulsory counterclaims." Alexander v. Fulton County, Ga., 207 F.3d 1303, 1323 (11th Cir. 2000). As recognized by the Eleventh Circuit in analyzing the requirements of Rule 13(a), "a claim arises out of the same transaction or occurrence if there is a logical relationship between the claims." Constr. Aggregates, Ltd. v. Forest Commodities Corp., 147 F.3d 1334, 1337 n.6 (11th Cir. 1998) (*per curiam*).

Plaintiff's claims arising from his incarceration at BSP and ASP bear no "logical relationship" to Plaintiff's claims arising from his incarceration at DSP. Plaintiff has attempted to group all of his claims in a single action by naming the State of Georgia and Brian Owens, the Commissioner of the Georgia Department of Corrections, as Defendants in the caption of his complaint. However, the State of Georgia is immune from suit under § 1983. See, e.g., Kitchen v. CSX Transp., Inc., 6 F.3d 727, 731 (11th Cir. 1993) ("The state of Georgia is immune to suit for any cause of action unless sovereign immunity is expressly waived by constitutional provision or statute."); see also Alabama v. Pugh, 438 U.S. 781, 782 (1978) (*per curiam*) (suit against State under § 1983 barred by Eleventh Amendment). Moreover, Plaintiff has failed to make any specific allegations against Defendant Owens demonstrating that he is somehow responsible for the alleged unconstitutional deprivations.

4

Thus, Plaintiff's attempt to group his claims in a single action simply by naming these Defendants in the caption of his complaint fails.

To the extent Plaintiff blames "Georgia prison administrators" for his problems, the Court notes that Plaintiff specifically identifies the "classification committees" at each prison as the entities responsible for assigning him to work detail despite his health problems, as well as the "medical administrative personnel" at each prison as the ones who should have advised the classification committees regarding his health and work requirements. (Doc. no. 1, p. 13). According to Plaintiff's description, separate committees exist at each prison and usually consist of the Deputy Warden of Care and Treatment, the chief counselor, a uniformed officer in charge of outside work detail, and a "computer person to record[] committee decisions." (Doc. no. 1, pp. 8, 13). Thus, the decisions to assign Plaintiff to work detail were made by separate committees, at separate times, and at separate prisons. Finally, as to Plaintiff's claims regarding the doctors who treated him, the Court notes that although Plaintiff alleges similar legal claims, he has allegedly suffered different health problems at each prison, has been treated by different doctors, and was performing different types of work when he allegedly suffered his medical crises. In sum, the alleged conditions and the alleged conduct that form the basis of Plaintiff's BSP, ASP, and DSP claims appear to be wholly independent, and thus, do not involve the "same transaction or occurrence."

Accordingly, Plaintiff's BSP and ASP claims should be dismissed without prejudice, with leave to re-file in the appropriate District and/or Division by submitting a separate complaint and either a motion to proceed IFP or the requisite $350.00 filing fee for each set of claims Plaintiff may choose to pursue. Because the events giving rise to Plaintiff's BSP

5

claims allegedly occurred in Hardwick, Georgia, the proper venue for those claims would be in the Macon Division of the Middle District of Georgia. Furthermore, because the events giving rise to Plaintiff's ASP claims occurred in Waycross, Georgia, the proper venue for those claims would be the Waycross Division of the Southern District of Georgia. If this Report and Recommendation is adopted by the presiding District Judge and Plaintiff chooses to pursue these claims in the appropriate venues, as noted above, Plaintiff is reminded that he will have to submit a separate complaint and either a motion to proceed IFP or the requisite $350.00 filing fee for each set of claims he wishes to pursue.

**B.  DSP Claims**

Turning to Plaintiff's DSP claims, the Court notes that in describing the events that allegedly occurred at DSP, Plaintiff's only allegations are that the "Dodge State Prison doctors" have not "re-started [his] established treatment" and that he has not seen "any doctors at Dodge S.P. [for the] damage done" by Dr. Santiago and Nurse Tootle. (Doc. no. 1, p. 11).

Although Plaintiff has provided a clear, short and plain statement of the facts giving rise to his DSP claims,[2] he has not identified by name any individuals who participated in any of the alleged constitutional violations. "Section 1983 requires proof of an affirmative causal connection between the actions taken by a particular person under color of state law and the constitutional deprivation." LaMarca v. Turner, 995 F.2d 1526, 1538 (11th Cir. 1993) (internal quotation marks and citations omitted). The Eleventh Circuit recently held that a

---

[2]Rule 8 of the Federal Rules of Civil Procedure provides that a pleading must contain, *inter alia*, "a short and plain statement of the claim" showing that the pleader is entitled to relief. Fed. R. Civ. P. 8(a)(2).

6

district court properly dismisses defendants where a prisoner, other than naming the defendant in the caption of the complaint, fails to state any allegations that associate the defendants with the purported constitutional violation. Douglas v. Yates, 535 F.3d 1316, 1322 (11th Cir. 2008) (citing Pamel Corp. v. P.R. Highway Auth., 621 F.2d 33, 36 (1st Cir. 1980) ("While we do not require technical niceties in pleading, we must demand that the complaint state with some minimal particularity how overt acts of the defendant caused a legal wrong.")).

Here, Plaintiff has not alleged any action taken by any specific individual named as a Defendant in relation to the events that allegedly occurred at DSP. Thus, in the absence of an allegation connecting any named Defendant with the alleged unconstitutional deprivation, Plaintiff fails to state a claim for relief based on his allegations regarding the events at DSP. However, the Court recognizes that Plaintiff is proceeding *pro se* and therefore recommends giving him an opportunity to attempt to cure his pleading deficiencies by amending his complaint <u>as to his DSP claims only</u>. Accordingly, if this Report and Recommendation is adopted by the presiding District Judge, Plaintiff should have fifteen (15) days from the date of the adoption order to amend his complaint as to his DSP claims, and more specific instructions for amending his complaint will be provided at that time.[3]

---

[3]The Court reserves its ruling on Plaintiff's request to proceed IFP until the issues addressed by this Report and Recommendation have been resolved by the presiding District Judge.

### III. CONCLUSION

For the reasons set forth above, the Court **REPORTS** and **RECOMMENDS** that Plaintiff's BSP and ASP claims be **DISMISSED** without prejudice, with leave to re-file in the appropriate venue. The Court further **REPORTS** and **RECOMMENDS** that, as to the DSP claims, Plaintiff be given the opportunity to cure his pleading deficiencies by amending his complaint.

SO REPORTED and RECOMMENDED this 28th day of September, 2009, at Augusta, Georgia.

W. LEON BARFIELD
UNITED STATES MAGISTRATE JUDGE